UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO. 3:11-CR-147 |
| | ) | |
| JOHN M. BALES, II (1), | ) | |
| WILLIAM E. SPENCER (2), and | ) | |
| PAUL J. PAGE (3) | ) | |

OPINION AND ORDER

Twelve pretrial motions pend before the court. Three [Doc. Nos. 73, 94 and 101] were filed under seal and will be addressed in a separate order. The remaining motions include a request for clarification of the April 12 opinion and order [Doc. No. 87], three motions to modify the court's pretrial procedures [Doc. Nos. 54, 55 and 56], four motions in limine [Doc. Nos. 58, 59, 61 and 108], and a motion for production of Rule 17(c)(1) documents. The court addresses each in turn.

I. MOTION FOR CLARIFICATION OF APRIL 12 ORDER

The defendants challenged the sufficiency of the indictment on due process grounds in their reply to the first motion to dismiss, contending that the "direct or indirect ownership" provision in the State contract was too vague to form the basis for criminal liability, and citing in support Chicago v. Morales, 527 U.S. 41

(1999) and United States v. Drew, 259 F.R.D. 449 (C.D. Cal. 2009). The court noted that "there might be merit to the defendants' due process argument," but held that the dispute over the meaning of "direct or indirect ownership" precluded resolution of the issue until the government's evidence was complete, and opined that a post-trial motion or motion at the close of the government's case might better frame the issue. *See* April 12, 2012 Opinion and Order [Doc. No. 49] at 11-12. "Assuming without deciding (since no party has identified another rule) that a criminal case would use the same rules as civil diversity cases," the court indicated that, "unless the government or a defendant suggests a better approach, [it] tentatively anticipates instructing the jury as follows: 'Neither the 2005 contract between Venture and Indiana Department of Administration, nor the Indiana law that governs that contract define 'direct or indirect ownership.' You may consider that while deciding whether any of the defendants acted with the intent to defraud as charged in the separate counts of the indictment.'" Id. at 12-13.

The defendants jointly ask for clarification of that order, seeking confirmation that the court will: (1) allow them to file a second motion to dismiss at the close of the Government's case, (2) apply the standard articulated in United States v. Bryant, 556 F.Supp.2d 378 (D.N.J. 2008) to that motion, and (3) give preliminary and/or final jury instructions with respect to intent to defraud that are consistent with the Bryant holding.

The clarification motion appears to seek reconsideration of an argument the court already rejected as premature because it can't be resolved until the government has had an opportunity to present its case. As previously noted, the court has heard too little to resolve the defendants' due process arguments at this stage of the proceedings. Whether and when the defendants choose to renew their motion to dismiss is a matter of trial strategy. It would be premature for the court to decide irrevocably how best to instruct the jury at this time, for the same reasons. Accordingly, the court DENIES the motion for clarification [Doc. No. 87].

## II. Jury Selection and Voir Dire

The defendants contend that the court's standard pretrial procedures are insufficient and that more detailed and case-specific inquiries are required in this case because of the complexity of the evidence, the number of defendants involved, the political overtones, and extensive pretrial publicity. They ask the court to exercise the discretion accorded it under FED. R. CRIM. P. 24, and modify its existing procedures to allow: (1) submission of a supplemental jury questionnaire, early access to the complete questionnaires, and the right to photocopy those questionnaires, [Doc. No. 54], (2) twenty minutes of attorney-conducted voir dire, with the time to be divided among the defendants by agreement of counsel, [Doc. No. 55], and (3) eight additional peremptory challenges, that may be exercised jointly. [Doc. No. 56].

3

The government objects to each proposed modification, contending that they are unnecessary and unjustified. The court agrees, in part.

The nature of the charges and number of defendants involved aren't unusual. The facts are detailed and there might be "political overtones" and negative pretrial publicity (though both seem unlikely in this district), but those factors don't justify the undue burden the proposed supplemental jury questionnaire would impose on potential jurors, or the additional peremptory challenges the defendants' seek. The court DENIES the defendants' motions for a supplemental jury questionnaire [Doc. No. 54] and for additional peremptory challenges [Doc. No. 56].

Consistent with FED. R. CRIM. P. 24(a)(1) and (2), the court ordinarily conducts the voir dire in criminal cases, but, upon a timely request, will allow attorneys to conduct up to ten minutes of voir dire. The defendants have requested that they be allowed a total of twenty minutes collectively to conduct a supplemental voir dire examination, with the time to be divided among them by agreement of counsel. The request is timely, consistent with the court's stated criminal case management procedures, and reasonable in light of the facts alleged and the unique collateral issues involved in this case. The defendants' motion for attorney-conducted voir dire [Doc. No. 55] is GRANTED. Counsel for the defendants will have 20 minutes collectively to conduct appropriate, non-repetitive supplemental voir dire, as will counsel for the government.

4

III. Motions In Limine

Motions in limine are designed to prevent the jury from hearing evidence that is clearly inadmissible, and the court has broad discretion to rule on such motions. Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002). When the evidence or its admissibility is speculative, "it is best to defer ruling until trial, where decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." Casares v. Bernal, 790 F.Supp.2d 769, 775 (N.D. Ill. 2011). Today's orders on evidentiary issues are interlocutory and not final in nature. When the court issues an order in limine, it simply requires counsel to raise the issue outside the jury's hearing before inquiring into, or presenting evidence on, the topic of the order. With that, the court turns to the pending motions.

A. *Defendants' Motions In Limine*

In the April 12 order denying the defendants motion to dismiss, the court stated that:

> …Venture's contract with the State doesn't define "direct or indirect ownership," and neither does Indiana law. Extrinsic evidence might breathe meaning into the phrase, but that evidence hasn't yet been presented. The defendants have offered documents they say are uncontested, and the government seems to agree the documents are fine as far as they go. But not all facts surrounding the ownership clause appear to be undisputed (the government says it has evidence beyond what the defendants attached to their motion), so the court can't resolve the [defendants' due process argument] at the pretrial stage: extrinsic evidence might demonstrate that the State and Venture had a common understanding of the meaning of "direct or indirect ownership.

5

[Doc. No. 49 at p. 11].

The parties dispute what the court meant by "extrinsic evidence," and that dispute has led to disagreements about the admissibility of "extrinsic evidence" (in the sense of the civil parol evidence rule, rather than in the sense of evidence extrinsic to the indictment) to explain the parties' intent in drafting the agreement.

That view is too narrow. The government has undertaken the task of proving both that the contract prohibited what the defendants are alleged to have done, and also that the defendants acted with the specific intent to defraud when doing those things. Evidence that might not be admissible as parol evidence to prove the contracting parties' intent might be admissible as circumstantial evidence of the defendants' intent (or lack of intent) to defraud. Pretrial motion practice is a clumsy method to decide whether a given class of admissible evidence might require a limiting instruction under Federal Rule of Evidence 105. Accordingly, the court DENIES the defendants' first motion in limine [Doc. No. 58], which seeks to exclude extrinsic evidence about the meaning of "direct or indirect ownership" and any person's or party's "subjective intent." The court will entertain timely objections and requests for a limiting instructions at trial.

The defendants' second motion in limine seeks to exclude opinion testimony from Michael Sibbing, the Commercial Closing Officer at Chicago Title who handled the closing on the Elkhart Building, contending that his opinion as a lay witness isn't relevant to whether the State and/or Venture had a "common

6

understanding" about the "direct or indirect ownership" provisions in the contracts or whether Mr. Bales and/or Mr. Spencer violated that understanding, citing United States v. Carlock, 806 F.2d 535, 552 (5th Cir. 1986), and that he can't testify as an expert because the Government hasn't complied with FED. R. CRIM. P. 16(a)(1)(G), or established his qualifications to testify as an expert under FED. R. EVID. 702.

The defendants' motion is speculative and premature. The court assumes compliance by all parties with the expert disclosure requirements in the December 15, 2011 order of discovery, and has no reason to question the government's assertion in response to the motion in limine that it won't ask Mr. Sibbing whether he assumed or opined that Mr. Bales was a member of L&BAB and/or a purchaser of the Elkhart Building. The court DENIES the defendants' second motion in limine [Doc. No. 61].

B. *Government's Motions In Limine*

In its first motion in limine [Doc. No. 59], the government seeks an order prohibiting the defendants from offering evidence and argument concerning multiple topics. Having reviewed the parties' positions with respect to each topic, the court holds as follows:

I. Evidence and Argument Regarding Miscellaneous Matters

    A. Date on which the defendants were charged: GRANTED.

    B. What constitutes ownership of real estate: GRANTED. This is an issue of law, on which the court will instruct the jury. *See* Panter v.

Marshall Field & Co., 646 F.2d 271, 294 n.6 (7th Cir. 1981)("It is not for witnesses to instruct the jury as to applicable legal principles of law, but the judge.").

      C. Principles of contract interpretation under Indiana Law: GRANTED, for the reasons stated in I-B.

      D. State's and Bank A's response when they learned of the alleged scheme: DENIED. This is probative of the parties' expectations under the contract and the defendants' intent.

      E. Whether the State and/or Bank A would have objected had they known of arrangement between BAB Equity and L&BAB: GRANTED. This would be speculative.

      F. Shared appreciation mortgage: DENIED. This is probative of the defendants' alleged intent to defraud.

      G. Application requirements for residential loan: DENIED, for the reasons stated in I-F.

      H. That Mr. Spencer sought to avoid conflicts of interest on other occasions: GRANTED. Evidence and argument on this topic would appear to be barred by FED. R. EVID. 404(b), as conduct offered to prove character to prove conduct.

      I. That the case is a civil matter: DENIED. It isn't clear what evidence would be excluded, and the argument might be permissible.

      J. That the State and/or Bank A had other means to resolve dispute with Venture and/or L&BAB: DENIED, for the same reasons stated in I-D.

      K. Unindicted co-conspirators: GRANTED. Whether other individuals could have been charged in the case makes no fact of consequence more or less probable, and has the potential to mislead and confuse the jury.

II. *Evidence and Argument Regarding the Elkhart Building*

      A. Pressure from State to facilitate lease of Elkhart Building: DENIED. This is probative of the theory of defense.

B. Reasonableness of State's lease rate: DENIED. If the contract is the backdrop against which intent to defraud is to be proven, the defense should be allowed, to some extent, to point out other aspects of the contract.

C. State's satisfaction with Elkhart Building: DENIED, for the reasons stated in II-B.

D. The defendants' inability to profit from the scheme: DENIED. Although success of the scheme isn't required for conviction, lack of success can be probative of the defendants' intent.

E. That the State and/or Bank A lost no money due to the scheme: GRANTED. Whether the bank lost money makes no fact of consequence to the action more or less likely.

III. *Evidence and Argument Regarding the Contract*

A. That Venture saved the State money under the State contract: DENIED. Such evidence might be probative of a defendant's specific intent.

B. That the State was pleased with Venture's performance under the contract: DENIED, for the reasons stated in I-D and I-I.

C. That Venture lost money under the State contract: DENIED, for the reasons stated in III-A.

D. That the defendants didn't commit fraud in connection with other leases: GRANTED, for the reasons stated in I-H.

E. That Venture performed services under the state contract other than arranging leases: DENIED. The relationship between the contracting parties is relevant to intent to defraud.

The government also seeks to exclude the testimony of David W. Nugent, an expert witness identified by defendant John Bales. Mr. Nugent, a commercial real estate broker, reportedly will offer testimony on the following topics:

(1) The state of the commercial real estate market in northern Indiana, including in Elkhart, Indiana, from 2008 to the present.

(2) A review and explanation of the closing documents associated with L&BAB's purchase of the Elkhart Building, including an opinion, that the deed to the Elkhart Building didn't transfer to Mr. Bales, Mr. Spencer, BAB Equity, and Venture, at the time of closing, and therefore none of those individuals or entities obtained an ownership interest in the Elkhart Building, as that term is understood in the commercial real estate industry;

(3) The opinion that the term "indirect ownership" is not a recognized or understandable term of art in the commercial real estate industry in northern Indiana, and Mr. Nugent is unaware of an accepted industry standard or commonly accepted definition of that term;

(4) The practice of establishing separate holding companies to hold real estate assets, and the opinion that the holding companies established for purposes of the Elkhart Building transaction are common and entirely consistent with other legal and legitimate real estate transactions conducted in northern Indiana;

(5) The concept of dual or limited agency and the opinion that Venture's representation of L&BAB in the purchase of the Elkhart Building and Venture's representation of the State of Indiana in the separate lease of the Elkhart Building did not violate the letter or spirit of the laws, regulations, and industry standards and practices governing dual and limited agency;

(6) The opinion about the relative valuation of the Elkhart Building from 2008 to the present, including an explanation of the concepts of valuation and "fair market value" in the commercial real estate market;

(7) A review and explanation of the fees received by Venture for services provided to L&BAB and the State, and the opinion that the fees received were proper and consistent with the real estate industry standards and practices in northern Indiana;

(8) A review of industry publications on "shared appreciation mortgages," and the opinion that the BAB/L&BAB Equity Agreement is consistent with the concept of those publications.

The government contends that Mr. Nugent's testimony is irrelevant, and would unfairly prejudice the government by confusing the issues, misleading the jury, and wasting time, and should be excluded in its entirety under FED. R. EVID. 402 and 403. The government also contends that Mr. Nugent's proposed testimony that he read about shared appreciation mortgages in unidentified industry publications and that the defendants' financial arrangements were consistent with those mortgages, is inadmissible under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). For the reasons that follow, the court GRANTS the government's second motion in part, and DENIES it in part.

Consistent with the court's rulings on the government's first motion in limine, Mr. Nugent may provide an opinion that will help the jury understand the evidence or determine a fact in issue (*i.e.*, the state of the real estate market in Elkhart and the value of the Elkhart Building in 2008, and the nature of shared appreciation mortgages and holding companies), but he can't give testimony stating ultimate legal conclusions based on those facts, or "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991); *accord*, Good Shepard Manor Found. Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003); United States v. Sinclair, 74 F.3d 753, 757-58 n.1 (7th Cir. 1996); Panter v. Marshall Field & Co., 646 F.2d 271, 294 n.6 (7th Cir. 1981). Contract interpretation is an issue of law, not fact, and Mr.

Nugent's opinions regarding the meaning of "direct and indirect ownership" and "dual or limited agency" and whether Venture or the defendants' violated the law are irrelevant and inadmissible. The court GRANTS the government's motion [Doc. No. 108] as to any opinion testimony Mr. Nugent might offer regarding issues of law. To the extent Mr. Nugent's specialized knowledge might assist the jury in understanding a fact in issue, the government's motion [Doc. No. 108] is DENIED.

IV. MOTION FOR PRETRIAL PRODUCTION OF DOCUMENTS

Defendant John Bales has filed a motion under FED. R. CRIM. P. 17(c)(1) asking the court to order Huntington Bank to produce numerous documents, communications, statements, and emails in its possession on or before December 22, 2012, more than a month before trial. (*See* Exhibit A to defendant's motion). The government objects, contending that Mr. Bales' request is a fishing expedition and that he hasn't shown the relevancy, admissibility, and specificity required under United States v. Nixon, 418 U.S. 683, 699-700 (1974). The court agrees.

The subpoena *duces tecum* in criminal cases wasn't intended to provide a means of discovery for criminal cases. United States v. Nixon, 418 U.S. 683, 698-699 (1974). Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials. Id. The moving party must show that:

    1.    the documents are evidentiary and relevant;

2. they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

3. the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

4. the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699-700.

Mr. Bales's motion states only that previous attempts to acquire the documents have been unsuccessful, and that the complexity of the case, the bank's unwillingness to voluntarily produce all of the documents, and the lack of prejudice to the government warrant the relief requested under Rule 17(c).

Pretrial production and inspection of relevant and admissible documents in the bank's possession undoubtedly would expedite the trial, but Mr. Bales hasn't made the showing required under Nixon. Accordingly, to the extent Mr. Bales seeks an order from the court requiring pretrial production of the documents listed in Exhibit A by December 22, 2012, the court DENIES the motion [Doc. No. 130].

V. CONCLUSION

For the foregoing reasons, the court:

(1) DENIES the defendants' motion for clarification of the April 12, 2012 order [Doc. No. 87];

13

(2) DENIES the defendants' motions for supplemental jury questionnaires [Doc. No. 54];

(3) GRANTS the defendants' motion for attorney conducted voir dire [Doc. No. 55];

(4) DENIES the defendants' motion for additional peremptory challenges [Doc. No. 56];

(5) DENIES the defendants' first motion in limine [Doc. No. 58];

(6) DENIES the defendants' second motion in limine [Doc. No. 61];

(7) GRANTS in part, and DENIES in part, the government's (first) motion in limine [Doc. No. 59];

(8) GRANTS in part, and DENIES in part, the government's (second) motion in limine to exclude testimony of defendant Bales' expert witness, David W. Nugent [Doc. No. 108]; and

(9) DENIES defendant Bales's motion for pretrial production of Rule 17(c)(1) documents [Doc. No. 130].

SO ORDERED.

ENTERED:   December 17, 2012

/s/ Robert L. Miller, Jr.
Judge
United States District Court